345 So.2d 767 (1977)
STATE of Florida, Appellant,
v.
Johnny Mack TURNER, a/K/a Johnny Lee Turner, Appellee.
No. 76-1494.
District Court of Appeal of Florida, Fourth District.
April 7, 1977.
Philip S. Shailer, State Atty., and Linda A. Naze, Asst. State Atty., Fort Lauderdale, for appellant.
Robert T. Adams, Jr., Fort Lauderdale, for appellee.
ANSTEAD, Judge:
The State is appealing an order granting a motion to suppress evidence, a gun, alleged *768 to be in plain view at the time Johnny Mack Turner was stopped for an alleged traffic violation. We reverse.
On October 8, 1975, two police officers, assigned to a "tactical impact unit," were on patrol in an unmarked car in Ft. Lauderdale. At approximately 2:40 a.m. the officers spotted a vehicle with defective taillights. The officers recognized the vehicle and the driver, Turner, whom they had arrested some six weeks previously for having no driver's license. The officers also knew Turner to have been a convicted felon.
At that time the officers placed a portable flashing blue light on top of their vehicle, turned on a siren, and proceeded to stop the Turner vehicle. Turner got out of his car, leaving the door open, and walked back toward the officers, who met him halfway. During the exchange that ensued, one of the officers noticed a gun on the front seat of Turner's car. The officer claimed the gun was in plain view, since the car door was open and the interior lights were on.
At the hearing the officers conceded that their arrest and knowledge of Turner were the primary factors which caused them to stop him. However, they testified that the taillights of the Turner vehicle were out and they stopped him to "see whether he had a driver's license and cite him for the taillights." Turner did not testify. The trial court granted the motion to suppress, apparently on the grounds that the officers could not validly stop Turner simply because of their prior knowledge of him.
In State v. Holmes, 256 So.2d 32 (Fla.2d DCA 1971), the Second District was faced with a very similar situation. Judge Mann set out the standards to be applied:
If we suppose an unsuspected person arrested for a traffic violation of such gravity that any citizen would be stopped for it, can we deny that contraband in plain view of the officer may lawfully be seized? Suppose, on the other hand, an equally grave violation by a person suspected of more serious crime. Is he immune from lawful arrest? Certainly he should not be. Is he then immune from lawful seizure of the evidence of the serious crime if it is then in plain view? We think not, provided that the gravity of the traffic offense is such that any citizen would routinely be stopped for it if seen committing the offense by a traffic officer on routine patrol. The circumstance that the arrest is made by one not normally engaged in the enforcement of the traffic laws is a factor which may tend to discredit the claim that any citizen would be apprehended under the circumstances, but it is wrong to say that because the person arrested is suspected of serious crime a traffic offense will not subject him to detention, and evidence to seizure, merely because the arresting officer's motive is to secure evidence of the more serious offense. (Id. at 34.)
As noted above, Turner did not testify, so we do not have his version of the incident. Under the officers' version, the Turner taillights were out. We believe the gravity of that offense is such "that any citizen would routinely be stopped for it if seen committing the offense by a traffic officer on routine patrol." Since the stopping was proper, the observation and seizure of the gun in plain view was proper.
REVERSED AND REMANDED.
DAUKSCH and LETTS, JJ., concur.